JOHN H. McADEN v. THE BOARD OF COMMISSIONERS OF MECK-
LENBURG COUNTY and W. F. GRIFFITH, Sheriff, &c.

*National Bank—Taxation of Shares in.*

In the taxation of shares of stock in a national bank, under the revenue
act of 1885, ch. 175, §12, clause 5, and Rev. Stat. of U. S., §5219, the
owner of such shares has the right to deduct from the assessed value
thereof the amount of his *bona fide* indebtedness, as in case of other
investments of moneyed capital.

This was a CIVIL ACTION, tried on demurrer, before *Mont-
gomery, Judge*, at February Term, 1887, of MECKLENBURG
Superior Court.

The plaintiff on the first day of June, 1886, being the
owner of 200 shares of the capital stock in the Merchants'
and Farmers' National Bank, and of 132 shares in the First
National Bank of Charlotte, both organized and operating
under the act of Congress for the formation of national
banking associations, at Charlotte, rendered during that
month a list of his taxable property, in which 100 shares of
such stock were given in at the par value of $100 per share.
The shares were assessed by the commissioners at $85 per
share, and the plaintiff charged with all the stock, at an ag-
gregate value of $28,220; and the list thus reformed was deliv-
ered to the sheriff for collection. The plaintiff reduced this
estimated value, by deducting his alleged indebtedness of
$18,220, claiming the right to do so, to the sum stated in the
list. The sheriff, acting under the directions of the Treas-
urer of the State, in reference to the raising of revenue, re-
fused to make any abatement, and was proceeding to enforce
payment, when, in an order made in the present action
against the county commissioners, they were restrained; he
having paid the entire tax against him upon the basis of
the deduction claimed, and as set out in the rendered list.

The defendants demurred to the complaint, assigning as grounds therefor:

1. That it appears by the said complaint, that the shares of stock of the two national banks owned by the plaintiff, were not, when listed for taxation, subject to deduction for debts owing by him, and there are no facts stated or alleged in the complaint from which it appears the plaintiff's said shares of stock are exempt from taxation, or have been improperly and unlawfully listed for taxation by the defendant commissioners.

2. That it appears from the complaint, that by the laws of this State, the defendant commissioners are fully authorized and required to list the said shares of stock for taxation in the manner in which they have listed them as set forth in the complaint, and that the taxes imposed upon the same are due and owing by the plaintiff, and that the defendant sheriff has the lawful power and authority to collect the same, as other taxes are collected.

3. That it appears from the said complaint, the said commissioners have acted in strict conformity with the statutes of this State in listing said shares of stock for taxation, and it does not appear that the Congress of the United States has enacted any legislation which protects the said shares of stock, or the plaintiff as the owner thereof, from the full operations of said statutes; nor is there any law of Congress that restricts or limits the power of this State to tax shares of stock of national banks, so as to deprive it of the power exercised in this particular case.

The following judgment was rendered:

" This cause coming on to be heard upon demurrer filed by the defendants, and the same being argued by counsel of the parties and considered by the Court; the Court doth overrule the demurrer filed, and give leave to the defendants to file an answer to the complaint.

" It is further adjudged, that the restraining order hereto-fore granted be continued to the hearing."

From this judgment the defendants appealed.

*Mr. W. P. Bynum,* for the plaintiff.
*Mr. Platt D. Walker,* for the defendants.

SMITH, C. J., (after stating the facts).  The revenue act of 1885, ch. 175, §12, in its enumeration of taxable property, contains this clause, numbered 5 :

" The amount of solvent credits, including accrued interest uncollected, owing to the party, whether in or out of the State, whether owing by mortgage, bond, note, bill of exchange, certificate, check, open account due and payable, or whether owing by any State, or government, county, city, town or township, individual, company or corporation. Any certificate of deposit in any bank, whether in or out of the State, and the value of cotton, tobacco, or other property, in the hands of commission merchants or agents, in or out of the State, shall be deemed solvent credits within the meaning of this act.  If any credit be not regarded as entirely solvent, it shall be given in at its true current or market value. *The party may deduct from the amount of solvent credits owing to him the amount of collectable debts owing by him as principal debtor."*

Not only are stocks not included in the credits, as defined in the clause, but some forms of visible property, crops in the hands of agents, are included in the term.

The act of Congress, without the authority of which no taxation upon the shares of these national banking associations could be imposed, confers this power upon the States within whose limits they are located, with the restrictions " that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State, and that the shares of any national

banking association owned by non-residents of any State, shall be taxed in the city or town where the bank is located, and not elsewhere." Rev. Stat. of U. S., §5219.

The term "moneyed capital" has been construed to embrace investments in banking associations as well as credits in a more strict sense, and hence an act denying deductions for indebtedness of the share owner from the value of his stock, when it is allowed to creditors who owe, is in violation of the permitting act of Congress, and is void as to share-holders who are indebted and have not such property as the deductions are allowed to be made from. The discrimination against such shares is wholly unauthorized.

In *Hepburn* v. *School Directors*, 23 Wall., 480, Chief Justice WAITE says : " We cannot concede that money at interest is the only moneyed capital included in that term as here used by Congress. The words are " other moneyed capital ; " that certainly makes stock in these banks moneyed capital, and would seem to indicate that other investments in stocks and securities might be included in that descriptive term.

In *Adams* v. *Nashville*, 95 U. S., 19, Mr. Justice HUNT, after remarking that the act did not mean to interfere with exemptions from taxation of homesteads and other property for meritorious considerations by a State, adds : " The plain intention of that statute was to protect the corporations formed under its authority from unfriendly discrimination of the States in the exercise of their taxing power."

In *People* v. *Weaver*, 100 U. S., 539, an act of New York was declared null, in that it refused "to the plaintiff the same deduction for debts due by him from the valuation of his shares of national bank stock, that it allows to those who have moneyed capital otherwise invested," &c.

So it has been held, that while the statute of the State requires all moneyed capital, including national bank shares, to be assessed at its true cash value, the systematic and intentional under-valuation of all other moneyed capital and

of shares in national banks at their full value, is a violation of the act of Congress. *Pelton* v. *National Bank*, 101 U. S., 143; *Cummings* v. *National Bank*, Ib., 153.

The subject was more elaborately examined in *Hill* v. *Exchange Bank*, 105 U. S., 319, on appeal from the Circuit Court of the United States for the Northern District of New York. The suit was brought by the bank, suing in right of and as representing the stockholders, to prevent the enforcement of the tax imposed by the State upon national bank shares, on the ground that no provision was made "for deduction from the assessed value of these shares of the debts honestly owing by the share-holders." The Circuit Court declared the enactment void; and while this ruling was reversed, it was declared that the share-holder had a right to have his own indebtedness taken from the valuation of his shares.

It was again considered, in *Evansville Bank* v. *Bretton*, Ibid., 322, in which the opinion of the majority of the Court is delivered by Justice MILLER. He reiterates the proposition, "that the taxation of bank shares by the Indiana statute, without permitting the share-holder to deduct from their assessed value the amount of his *bona fide* indebtedness, as in the case of other investments of moneyed capital, is a discrimination forbidden by the act of Congress." The statute referred to, somewhat like our own and less obnoxious to the objection, allowed the tax-payer's debts to reduce his:

I. Credits or money at interest either within or without the State at par value, and

II. All other demands against persons or bodies corporate either within or without this State. Three of the Court dissented, the Chief Justice and Justice GRAY being of opinion, that the deduction allowed of one indebtedness from another indebtedness, was not within the purview of the enactment, and was not a prohibited discrimination, while Justice BRADLEY held the whole provision for taxing national bank shares

inoperative, whether the owner owed debts to be deducted or not. The State statute was held by the Court to be void only as it interfered with the right of one in debt to have his valuation of stock diminished thereby when subjected to taxation.

These cases settle the question of construction and we abide by the rulings in them.

There is no error, and this will be certified to the Court below.

No error.                    .                    Affirmed.