THOMAS H. HULBERT

*v.*

THE PEOPLE *ex rel.* Raymond, County Collector.

*Opinion filed February 20, 1901.*

TAXES—*in absence of fraud, question of valuation of property for taxation is not for courts.* The ascertainment of the valuation of property for taxation by the person or persons appointed or elected as provided by the act of the legislature is not, in the absence of fraud, subject to the supervision of the courts.

APPEAL from the County Court of Cook county; the Hon. M. W. THOMPSON, Judge, presiding.

GEORGE W. WILBUR, for appellant.

JULIUS A. JOHNSON, County Attorney, W. F. STRUCK-MANN, Assistant County Attorney, and FRANK L. SHEP-ARD, Assistant County Attorney, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

This is an appeal from a judgment of the county court, rendered upon the application of the county collector for judgment for delinquent taxes, against real estate belonging to the appellant. Appellant filed objections to the entry of judgment against his land, which objections were overruled, and judgment was entered by the court below for the taxes as levied.

*First*—The first objection, made by the appellant, is that there was an over-valuation of his property for assessment, and that the amount assessed against the same was in excess of its fair value. We have held in a number of cases, that the constitution of this State prohibits the ascertainment of the value of property for purposes of taxation by any other person than a person elected or appointed by the legislature. Under the Revenue law

of 1898 the power to value property for assessment is vested in the board of assessors in the first instance, and, upon review, in the board of review. Section 23 of the act of 1898 provides that, at the meeting of the board of assessors, the board shall revise the assessment, and correct the same, as shall appear to them to be just, upon the application of any tax-payer. It does not appear in this case that the appellant appeared before the board of assessors, or made any application to it to revise and correct the assessment against his property. The second paragraph of section 35 of said act provides that the board of review shall review the assessment, and correct the same, on complaint in writing of any person that his property has been assessed too high. It is not shown in this case that the appellant made complaint to the board of review that his property was assessed too high. In view of these facts, the county court properly overruled the appellant's objection so far as it refers merely to the over-valuation of his property. We have held in a number of cases that the courts have no power to fix the valuation of property for taxation, and that the determination of the value to be fixed upon property liable to be assessed is not, in the absence of fraud, subject to the supervision of the judicial department of the State. (*Burton Stock Car Co.* v. *Traeger*, 187 Ill. 9, and cases there referred to).

*Second*—Appellant further objects, that he was not furnished with such information as to the valuation of his property for assessment, as would have enabled him to object to the over-valuation thereof within the time required by law.

In support of this objection counsel for appellant refers to sections 27 and 35 of the Revenue law of 1898, and quotes the testimony of the appellant in the court below as referring to and coming within the purview of these sections. Section 27 provides that "in counties having a

board of assessors, the chief clerk when requested, shall deliver to any person a copy of the description, schedule, return or statement of property assessed in his name or in which he is interested, and the valuation placed thereon by the assessor or the board of review." (Hurd's Rev. Stat. of 1899, p. 1450). Paragraph 2 of section 35 of said act provides that "on complaint in writing of any person or corporation that his or its property has been assessed too high, they (the board of review) shall review the assessment and correct the same, as shall appear to be just: *Provided*, such complaint shall have been made on or before the first Monday of August." (Ibid. p. 1452). Counsel says in his brief, that appellant was not able to ascertain the amount of his assessment before the 6th day of August, 1900, that date being the first Monday of August, 1900, and, therefore, he was not required to make further effort in that direction because no such effort would have been availing. He says that, if complaint had been made after the 6th day of August, 1900, and received by the board of review after that date, it would have been so received in direct violation of a positive statute to the contrary.

If appellant had been refused the information specified in section 27, and had been unable, by reason of such refusal, to make his complaint before the board of review until after the first Monday of August, 1900, a different question would have been presented from that which actually arises upon this record. It is unnecessary for us to consider the question, whether such an objection could be made in opposition to the entry of judgment and order of sale by the county court upon application of the county collector. The proof in this case does not sustain the facts set up in the objection thus made.

In the first place, no such objection is to be found among the original objections filed by the appellant in the court below on July 11, 1900. After the appellant had been examined as a witness upon the trial below, and

the testimony hereafter quoted had been elicited from him on the re-direct examination, and after judgment had been entered against appellant's property, then on August 7, 1900, the appellant made a motion, and procured an order in pursuance thereof, allowing him to file additional objections *nunc pro tunc* as of July 31, 1900. Among these additional objections was the seventh in number as follows, to-wit: "This objector was deprived of a hearing before the board of review and before the board of assessors through no fault of his own." If the point now under consideration can be made at all, it can only be made under this seventh objection filed in the manner above stated.

Upon the re-direct examination of the appellant the following occurred: "Q. I will ask you whether you made any effort to save your rights before the board of assessors or the board of review? If so, what did you do?— A. I went repeatedly and sent repeatedly to the board of assessors to get the full valuation for purposes of assessment. I was unable to do it until after the time fixed by law, which I was then informed for the filing of objections, I ceased trying to get the values." Section 27 provides, that the chief clerk of the board of assessors shall, when requested, deliver to any person a copy, description or statement of the property assessed in his name, and the valuation placed thereon by the assessor or board of review. The testimony of the appellant, which is the only testimony upon the subject, does not state that he applied to the chief clerk for the copy in question, and that the chief clerk refused to give it to him. He says that he went repeatedly and sent repeatedly to the board of assessors to get the full valuation for purposes of assessment. Under section 23 of the act of 1898 the board of assessors has a meeting on the first Monday of June in each year for the purpose of revising the assessment of real estate; and this meeting may be adjourned from day to day as may be necessary; and the

board is required to finish its revision upon or before the first day of July. Section 23 further provides that, when such revision is completed and the changes and revisions are entered in the assessment books, an affidavit shall be appended to each of such assessment books, etc., and, upon the signing of such affidavits, the board of assessors shall have no further power to change the assessment. If, as appellant says, he went repeatedly to the board of assessors, he must have gone to the board of assessors while they were in session between the first Monday of June and the first day of July. If he did so, and failed to get what he desired, then there was no reason why, after the first day of July, he should not have applied to the chief clerk of the board in accordance with the provisions of section 27. It is not clear from his testimony that he was unable to get the information he desired until after the first Monday of August. His testimony may as well refer to his failure to get the information until after the completion of the revision of the assessment by the board of assessors, as to any failure to get it until after the first Monday of August, 1900. His evidence does not necessarily mean, that he was prevented from getting the information in time to go before the board of review with his complaint. It can as well be construed to mean that he was prevented from getting such information in time to make his objection before the board of assessors. Indeed, he refers exclusively to the board of assessors, and says nothing about the board of review. Moreover, his testimony gives no reason why he was unable to get the information he desired. Such inability may as well have been due to the fault of his own application to the wrong source, or to the fault of the messenger sent by him in not applying to the right source, as to any failure of the chief clerk of the board of assessors to do his duty. We are of the opinion, that the contention of counsel, as embodied in the objection now under consideration, which is based altogether upon

a matter of fact, is not sustained by the evidence in the case. Therefore, the county court committed no error in overruling the objection.

Accordingly, the judgment of the county court is affirmed.                                   *Judgment affirmed.*