STATE ex rel. CONRAD BANKING CORPORATION OF GREAT FALLS, Relator, *v.* MADY, Assessor, Respondent.

(No. 6,363.)

(Submitted December 3, 1928.   Decided December 17, 1928.)

[272 Pac. 691.]

Mr. *Frank Woody,* for Relator, submitted an original and a supplemental brief and argued the cause orally.

Mr. *L. A. Foot,* Attorney General, and Mr. *C. N. Davidson,* Assistant Attorney General, for Respondent, submitted a brief; Mr. *Davidson* argued the cause orally.

Mr. *T. B. Weir, Amicus Curiae,* submitted a brief.

Mr. *Frank T. Hooks, Amicus Curiae,* submitted a brief.

Mr. *P. F. Leonard, Amicus Curiae,* submitted a brief.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This proceeding was brought by a state bank, whose principal place of business is at Great Falls, to restrain the assessor of Cascade county from placing the bank stock of relator's

shareholders in class 6 of section 1999 of the Revised Codes of 1921, and from placing the stock in any other class than 5.

The petition shows that the bank is carrying on a general banking business in this state, with a capital of $250,000, divided into 2,500 shares of the par value of $100 each, its shares being owned and held by persons both within and without the state; that in accordance with the laws of this state relator, after the first Monday in March, 1928, returned to the assessor, on blanks furnished by him, an assessment list from which that officer rightfully and properly determined that by reason of its ownership of United States bonds relator had no moneyed capital subject to taxation for the year 1928, but the value of the bank shares was $157,736.76 in excess of the value of the property owned by relator subject to assessment and taxation for that year; and thereupon the county assessor proceeded to assess the stock to the shareholders. There are three national banking associations in open and active competition with relator in the city of Great Falls, and a large number of state and national banks engaged in carrying on a general banking business in this state; "the shares of stock of both state and national banks are property of exactly the same kind, character and class."

The state board of equalization, on June 1, 1928, addressed a letter to all county assessors directing them to assign national bank shares to class 5, and moneyed capital of state banks and state bank shares to class 6. It was alleged that unless the defendant assessor be restrained from so doing he would comply with the board's directions, which eventually would compel the relator, for its stockholders, to pay taxes on the state bank shares on a basis of forty per cent of the assessed value thereof, while the owners of the shares of the national banks would be required to pay on a basis of seven per cent, and that to classify the property as above indicated or in any other manner except by placing bank shares of both state and national banks in the same class would constitute such an arbitrary and unreasonable classification as to violate

the uniformity clause of our state Constitution; that by reason of such classification the national banks, being corporations not organized or existing under the laws of this state, would be permitted to exercise and enjoy within this state greater rights and privileges than those possessed or enjoyed by corporations of the same kind and character created under the laws of this state, in violation of the provisions of section 11 of Article XV of the state Constitution.

The attorney general filed a motion to dismiss the petition on the ground that it does not state facts sufficient to warrant the granting of the relief sought, or any relief whatsoever. We held the attorney general's motion well taken and ordered the proceeding dismissed. The opinion was announced July 25, 1928, the day the court adjourned for its summer vacation. In due time relator applied for a rehearing, supporting its motion with recent authorities which were not called to our attention when the cause was submitted for decision, two of which had not yet appeared in the advance sheets. Being in doubt as to the soundness of our opinion we granted the motion. The case has been re-argued, and we have been favored with comprehensive briefs by all counsel, including *amici curiae*. The original opinion is now withdrawn.

1. Section 1999, Revised Codes 1921, provides that "for the purpose of taxation the taxable property in this state shall be classified as follows: * * *

"Class five. All moneys and credits, secured or unsecured, including all state, county, school district and other municipal bonds, warrants and securities without any deduction or offset; provided, however, that the terms, moneys, and credits as herein used shall not embrace the moneyed capital employed in the banking business by any banking corporation or individual in this state.

"Class six. The shares of stock of national banking associations and the moneyed capital employed in conducting a banking business by any other banking corporation, associa-

tion or individual in this state. Such money capital to be ascertained by deducting from the moneys and credits of such . banking corporation, association, or individual, the amount of the deposits and any indebtedness representing money borrowed for use in said business, and the value of the shares of any national banking association, to be ascertained by deducting the value of all real estate of such association.

"Class seven. All property not included in the six preceding classes."

(Not by any construction can the property in question be assigned to class 1, 2, 3 or 4.)

Section 2000, Id., provides: "As a basis for the imposition of taxes upon the different classes of property specified in the preceding section, a percentage of the true and full value of the property of each class shall be taken as follows: * * * Class 5. Seven per cent. of its true and full value. Class 6. Forty per cent. of its true and full value. Class 7. Forty per cent. of its true and full value."

By the provisions of section 5219, Revised Statutes of the United States, as amended (United States Code, Annotated, Title 12, sec. 548), Congress has permitted the taxation of shares in national banks to their owners under the laws of the state where the bank is located, subject to the restriction that the taxation "shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state coming into competition with the business of national banks: Provided, That bonds, notes, or other evidences of indebtedness in the hands of individual citizens not employed or engaged in the banking or investment business and representing merely personal investments not made in competition with such business, shall not be deemed moneyed capital within the meaning of this section." By the decisions of the supreme court of the United States construing that statute, it is established that the phrase "other moneyed capital" is not intended to include all moneyed capital not invested in bank shares, but only that which is employed in

such way as to bring it into substantial competition with the business of national banks. (*First Nat. Bank of Guthrie Center* v. *Anderson,* 269 U. S. 341, 70 L. Ed. 295, 46 Sup. Ct. Rep. 135; *Mercantile Nat. Bank* v. *New York,* 121 U. S. 138, 30 L. Ed. 895, 7 Sup. Ct. Rep. 826; *Aberdeen Bank* v. *Chehalis County,* 166 U. S. 440, 41 L. Ed. 1069, 17 Sup. Ct. Rep. 629.)

In *Commercial National Bank of Miles City* v. *Custer County,* 76 Mont. 45, 245 Pac. 259, we held, following (as we supposed) the decisions of the supreme court of the United States, cited in our opinion, that the fact condition complained of did not amount to a discrimination against the plaintiff national bank. The case was taken to the supreme court of the United States on a writ of error, and in a memorandum opinion (275 U. S. 502, 72 L. Ed. 395, 48 Sup. Ct. Rep. 155) our judgment was "reversed on the authority of *First National Bank of Hartford* v. *Hartford,* 273 U. S. 548, 559, 560 [71 L. Ed. 767, 47 Sup. Ct. Rep. 462]; *Minnesota* v. *First National Bank of St. Paul,* 273 U. S. 561, 567, 568 [71 L. Ed. 774, 46 Sup. Ct. Rep. 468]." The two decisions referred to in the memorandum opinion cover a wider range than did their predecessors upon the same subject and deal specifically either with questions untouched, or merely hinted at, in prior opinions—a result no doubt of the broad development of modern business.

At any rate, a study of these cases, the basis of the reversal, discloses that the supreme court was of the opinion that the acts complained of did amount to a discrimination against the plaintiff bank, and that our Classification Act permits such discrimination; in other words, that the Act permits the taxation of moneys and credits which come into substantial competition with the business of national banks at seven per cent of their value, while shares in national banks are taxed at forty per cent of their value.

Following the reversal of the *Custer County Case,* the state board of equalization, in an attempt to prevent the escape of the national bank shares from taxation altogether, directed

the assessors to assign them to class 5. The propriety of this direction we shall not now undertake to determine, for it is not challenged in this proceeding; on the contrary, counsel for relator, the attorney general, and some of the *amici curiae* give it their approval.

Our Constitution and statutes require the taxation of shares of state banks to the extent that they have a value beyond that of the taxable property of the bank. (Constitution, Art. XII, sec. 17; sec. 2067, Rev. Codes 1921, as amended by Chapter 64, Session Laws 1927; *Montana Nat. Bank* v. *Yellowstone County*, 78 Mont. 62, 252 Pac. 876; Id., 276 U. S. 499, 72 L. Ed. 673, 48 Sup. Ct. Rep. 331.)

Clearly, it was not contemplated by the law-making body that stocks would fall into class 5. They are not "credits," as is contended by counsel for relator. "The term 'credit' means those solvent debts, secured or unsecured, owing to a person," and it is employed in that sense alone in dealing with the subject of taxation, declares the statute. (Sec. 1996, Rev. Codes, 1921.) Stocks are not credits and credits are not stocks within the meaning of the statute. (*Commercial Nat. Bank* v. *Chambers*, 21 Utah, 324, 56 L. R. A. 346, 61 Pac. 560, affirmed 182 U. S. 556, 45 L. Ed. 1227, 21 Sup. Ct. Rep. 863; *Morrill* v. *Bentley*, 150 Iowa, 677, 130 N. W. 734.)

Nor, the language of class 6 considered, does it seem proper to place them in that class, for it embraces only shares of stock of national banking associations and the moneyed capital employed in conducting a banking business by any other banking corporation, etc., and the method of ascertaining the "moneyed capital" is prescribed; the process to be followed excludes the idea that shares of stock in state banks may be included. The moneyed capital referred to in class 6 is that which is owned by the bank and employed in its business. The corporation is the legal owner of the property of the bank; the interest of the stockholder therein, represented by his shares, is a distinct and independent property,

held by him as is any other property which may belong to him. (*Montana Nat. Bank* v. *Yellowstone County*, 78 Mont. 62, 252 Pac. 876.)

Into what class should stocks go? The answer is that unless otherwise provided they must go into class 7. This clearly was the intention of the tax and license commission which prepared the Classification Act. (See Report of Tax and License Commission, p. 22.) The legislative assembly passed, without change, the Act as recommended. Counsel for relator strenuously insists that shares of stock of a state bank are not moneyed capital. This position cannot be maintained. If it were sound, for the reasons given above, relator would be out of court. The shares do come within the term "moneyed capital" beyond any doubt. (*Montana Nat. Bank* v. *Yellowstone County*, 276 U. S. 499, 72 L. Ed. 673, 48 Sup. Ct. Rep. 331; *Mercantile Bank* v. *New York*, 121 U. S. 138, 30 L. Ed. 895, 7 Sup. Ct. Rep. 826; *First Nat. Bank of Aberdeen* v. *Chehalis County*, 166 U. S. 440, 41 L. Ed. 1069, 17 Sup. Ct. Rep. 629; *First Nat. Bank of Nephi* v. *Christensen*, 39 Utah, 568, 118 Pac. 778.) This moneyed capital comes into competition with the business of the national banks. It is admitted that the shares of stock of both state and national banks are property of the same kind, character and class.

When national bank shares are taxed upon the seven per cent basis or are not taxed at all, is there not an unlawful discrimination against state bank shares which are taxed upon the forty per cent basis?

Our Constitution commands the taxation of all property which is not exempt. It is desirable, if not imperative, for the state to tax national bank shares. These constitute a considerable percentage of the taxable wealth of the state, and national banks under our present system are an essential cog in the business wheel. In order to tax the shares pursuant to the Act of Congress, and that there shall not be any discrimination against them, nor in their favor, it is obvious that national bank shares, state bank shares, the moneyed

capital employed in conducting a banking business by corporations in this state, and moneyed capital in the hands of individual citizens of this state coming into competition with the business of banks, national and state, should be classified alike, and taxed upon the same percentage of value. The next session of the legislative assembly undoubtedly will enact statutes designed to arrive at this highly desirable result.

Section 11 of Article XII of the Constitution provides: "Taxes shall be levied and collected by general laws and for public purposes only. They shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax." The state can assess shares of national banking associations only as Congress permits. Congress could, if it desired to do so, prohibit the taxation of such shares altogether, and it could, if it desired, restrict the taxation thereof within certain definite limitations. This Congress has not done, except to say that national bank shares shall not be assessed at a higher rate than is assessed upon moneys employed in competition therewith. The states are given an unlimited power to tax national bank shares with that limitation only.

It is argued that by thus restricting the taxation of national bank shares Congress has restricted, and may destroy, the state's power to classify property for the purposes of taxation. In one view this is a potent argument, but upon mature consideration we do not think it controlling. That Congress may not interfere with the taxation of property which it is the exclusive right of the state to tax will not be questioned. The difficulty here arises chiefly upon the requirements of the state Constitution. It requires the taxation of all property not exempt, and that the tax must be uniform upon the same class of subjects. The congressional requirement we are considering is not inconsistent with our constitutional provision requiring uniformity. It is thus our own fundamental law, acting co-ordinately with the law of Congress, which compels the state to tax state as well as national

bank shares upon the same basis. The classification law placing national bank stock in class 6 and money coming into competition with the business of national banks in class 5 contravenes the provisions of section 5219. To that extent the classification law was and is invalid; it is not lawful to tax national bank stock on the forty per cent basis. Conceding that it is proper under the law to tax it on the seven per cent basis, we find the law attempting to tax the state bank stock on the forty per cent basis—property of exactly the same kind—a clear violation of the constitutional uniformity requirement. The state does not abrogate any part of its taxing power because it yields to Congress with respect to the taxation of a species of property which it could not tax without the consent of Congress, when its own fundamental law compels it to tax similar property upon the same basis on which it taxes property subject to the restrictions of Congress.

The conclusion to which we have come is fortified by the decisions in *State Bank of Omaha* v. *Endres*, 109 Neb. 756, 192 N. W. 322; *Central Nat. Bank of Lincoln* v. *Sutherland*, 113 Neb. 126, 202 N. W. 428; *Commercial State Bank* v. *Wilson* (S. D.), 220 N. W. 152; *State ex rel. Spillman* v. *Ord State Bank* (Neb.), 220 N. W. 265; *Munn* v. *Des Moines Nat. Bank* (C. C. A.), 18 Fed. (2d) 269. A diligent search has failed to disclose any authority to the contrary.

2. The arguments that the acts complained of by relator are in contravention of section 11 of Article XV of our Constitution is without merit. A national banking association is not a foreign corporation. Upon this point the reasoning of Mr. Chief Justice Brantly in *State* v. *Thomas Cruse Savings Bank*, 21 Mont. 50, 45 L. R. A. 760, 52 Pac. 733, is conclusive and need not be repeated.

3. It follows that the shares of relator's stockholders cannot lawfully be placed in class 6 or 7. Whether the taxing authorities could arbitrarily place them in class 5 we need not inquire. Nor do we have to decide whether as a matter of

law the shareholders are entitled to have their stock assigned to class 5 upon the theory that a taxpayer who is discriminated against has the right to have his assessment reduced to the percentage of that value at which others in like situation are taxed even though this would involve a departure from the statute, a course approved by the supreme court of the United States. (*Greene* v. *Louisville & Interurban R. R. Co.*, 244 U. S. 499, 61 L. Ed. 1280, 37 Sup. Ct. Rep. 673; *Sioux City Bridge Co.* v. *Dakota County*, 260 U. S. 44, 28 A. L. R. 979, 67 L. Ed. 340, 43 Sup. Ct. Rep. 190.) Under the circumstances that course is proper in this case. The relator asks that it be followed, and the taxing authorities are not in a position to object to it.

Let a writ issue commanding the county assessor to amend his records so that the shares of relator's stockholders shall be assessed for the year 1928 as in class 5 instead of class 6 of section 1999, Revised Codes 1921.

*Writ ordered issued.*

Associate Justices Myers, Stark, Matthews and Galen concur.