BANK OF MILES CITY, Appellant, *v.* CUSTER COUNTY, Respondent.

(No. 7,071.)

(Submitted January 3, 1933. Decided January 21, 1933.)

[19 Pac. (2d) 885.]

292

*Mr. Frank Woody* and *Mr. P. F. Leonard,* for Appellant, submitted a brief; *Mr. Woody* argued the cause orally.

*Mr. L. A. Foot,* Attorney General, *Mr. L. V. Ketter,* Assistant Attorney General, and *Mr. Rudolph Nelstead,* County Attorney of Custer County, for Respondent, submitted a brief; *Mr. Ketter* argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

The appellant, a banking corporation organized under the laws of Montana, conducting a general banking business at Miles City, Custer county, brought this action for the purpose of recovering a portion of its taxes assessed for the year 1929, paid under protest, and within the time allowed by law for the commencement of this class of action.

The assessor of Custer county had determined the value of the moneyed capital, the property of appellant bank, assessed it as such to the bank, and determined the value of the shares of stock in the bank by ascertaining the full cash value thereof and deducting therefrom the value of property otherwise assessed to the bank, including moneyed capital, which residue was assessed as against the shares of stock. Taxes were then imposed as against the moneyed capital and the shares of stock on the basis of 30 per cent. of the full and true value of these properties.

The assessment and imposition of the tax were in accordance with the provisions of Chapter 64 of the Laws of 1929. Under the provisions of this Act, moneys and credits other than shares of stock and moneyed capital belonging to state and national banks and individuals coming into competition with the business of national banks or employed in conducting a banking or investment business are subject to the imposition of a tax on the basis of 7 per cent. of their full, true and assessed valuation.

The appellant bank computed the taxes on the moneyed capital on the basis of 7 per cent. of the full, true and assessed valuation, and on the basis of this computation paid to the county assessor of the respondent the sum of $114.92, without protest, and paid the sum of $377.53, the excess of the tax imposed by reason of the difference in the computation between computing the tax on 7 per cent. of the valuation and 30 per cent. of the valuation.

The appellant likewise paid, without protest, the sum of $352.88 on the value of the shares of stock computed on 7

per cent. of the valuation thereof, and the sum of $1,159.45, under protest, being the difference between the value of the stock taxed on the basis of 7 per cent. of its full and true valuation and 30 per cent. of the full and true valuation thereof.

The appellant by this action sought to recover the sum of $1,536.98, being the total amount of taxes paid under protest, on the theory that, for certain reasons hereafter discussed, Chapter 64, supra, was invalid and void, being in violation of certain provisions of the state and federal Constitutions. Judgment in the court below, after trial, was for the dismissal of the complaint of appellant.

By appropriate specifications of error, appellant presents to this court the question as to the validity of Chapter 64, Laws of 1929. Appellant contends that the Chapter creates on the face of the law a discrimination in favor of moneys and credits owned by individuals and corporations other than national and state banks, and those in the hands of corporations coming into competition with the business of national banks, or employed in conducting a banking or investment business, and thereby the Act is rendered void by the provisions of section 11, Article XII, of the state Constitution, and the provisions of the federal Constitution (Amendment 14) prohibiting a state from making and enforcing any law which deprives a person of property without due process of law, or denies to any person the equal protection of the law.

The burden of the argument on behalf of appellant in support of this contention is that moneys and credits are not the ▮▮▮▮ subject of further classification for the purposes of taxation. This court has held, and appellant concedes, that it is within the power of the legislature to classify property for the purposes of taxation. (*Hilger* v. *Moore,* 56 Mont. 146, 182 Pac. 477.)

In the solution of the question as to whether or not it is possible to further classify moneys and credits into two or more classes for the purposes of taxation, a statement of the

fundamental principles of law underlying the classification of property is necessary:

The use to which the property is devoted and its productivity constitute the measuring stick in determining its proper classification. (*Chicago, Milwaukee & St. Paul Ry. Co.* v. *Powell County,* 76 Mont. 596, 257 Pac. 1096; *Hilger* v. *Moore,* supra; 1 Cooley on Taxation, 4th ed., sec. 335, p. 717; *McHenry* v. *Alford,* 168 U. S. 651, 666, 18 Sup. Ct. Rep. 242, 42 L. Ed. 614; *State* v. *Leonardson,* 51 Idaho, 646, 9 Pac. (2d) 1028.)

The basis for classification of the thing classified need not be deducible from its nature. (*Watson* v. *State Comptroller of New York,* 254 U. S. 122, 125, 41 Sup. Ct. Rep. 43, 65 L. Ed. 170; *Stebbins* v. *Riley,* 268 U. S. 137, 144, 45 Sup. Ct. Rep. 424, 69 L. Ed. 884, 44 A. L. R. 1454.)

Discrimination merely is not inhibited, for it is recognized that there are discriminations which the best interests of society require. (*Heisler* v. *Thomas Colliery Co.,* 260 U. S. 245, 255, 43 Sup. Ct. Rep. 83, 67 L. Ed. 237.)

A classification is not open to objection unless it precludes the assumption that the classification was made in the exercise of legislative judgment and discretion. (*Stebbins* v. *Riley,* supra.)

Any classification is permissible which has a reasonable relation to some permitted end of governmental action. (*Heisler* v. *Thomas Colliery Co.,* supra; *Watson* v. *State Comptroller of New York,* supra.)

When there is a difference between various properties, it need not be great or conspicuous in order to warrant classification. (*Citizens' Telephone Co.* v. *Fuller,* 229 U. S. 322, 331, 33 Sup. Ct. Rep. 833, 57 L. Ed. 1206; *Keeney* v. *New York,* 222 U. S. 525, 536, 32 Sup. Ct. Rep. 105, 56 L. Ed. 299, 38 L. R. A. (n. s.) 1139.)

For the purposes of classification of property, there is a difference in the doing of business and its results. (*Citizens' Telephone Co.* v. *Fuller,* supra.)

It makes no difference that the facts on which the classification is based may be disputed or their effect opposed by

argument and opinions of serious strength. It is not within the province of the courts to arbitrate any such contrariety. (*Rast* v. *Van Deman & Lewis Co.*, 240 U. S. 342, 357, 36 Sup. Ct. Rep. 370, 60 L. Ed. 679, Ann. Cas. 1917B, 455, L. R. A. 1917A, 421; *Heisler* v. *Thomas Colliery Co.*, supra.)

Moneys and credits, when employed in the banking business ▉ or in a business in competition therewith, have a greatly increased productivity as compared to moneys and credits in the hands of the ordinary individual or corporation using them for casual investment only. The bank uses its money as a stock in trade, and through its use buys and sells securities and commercial paper for profit, purchases notes at a discount, makes short-time loans, whereby it is enabled to secure interest or profit and re-invest it many times during a given year. By reason of these banking practices, careful investment in a banking business during the course of a year's time yields a much larger income on a percentage basis than the same money yields in the hands of the casual investor. The use of the money by a bank, as compared to the occasional investor, is essentially different and results in greater productivity; because thereof a substantial reason exists as a proper foundation for the division of moneys and credits into two classes for the purposes of taxation.

Counsel for appellant have invited the attention of this court to numerous authorities wherein it is held that the division of the same kind of property into separate classes is arbitrary and discriminatory, and therefore void. But an examination of all the authorities cited reveals the fact that the classification condemned was not supported by any substantial reason for its creation or existence, with the possible exception of the case from the supreme court of Kansas. (*Voran* v. *Wright*, 129 Kan. 1, 281 Pac. 938.) But that court fails to give consideration to the difference in the use of property as a basis for classification.

This court, however, has taken a contrary view on that subject, as well as has the supreme court of the United States, and no sufficient reason is given why this court should depart

from established precedents. Nevertheless, the Kansas court has in a subsequent decision recognized a further classification of moneys and credits, if a fair basis in support thereof is established. (*Citizens' Bank of Galena* v. *Tax Commr.*, 132 Kan. 5, 294 Pac. 940. Also see *Davis-Wellcome Mortgage Co.* v. *Haynes*, 119 Kan. 1, 237 Pac. 918.)

We therefore conclude, and so hold, that moneys and credits may be classified for purposes of taxation in different classes, where, as here, by reason of the difference in the use and . productivity of the same, a substantial reason exists as a foundation for such classification.

Appellant further contends that the provisions of Chapter 64, Laws of 1929, in providing that credits not employed in a banking or investment business, or in competition with banking business, shall not include evidences of indebtedness secured by mortgages of record upon real or personal property in this state, while providing that moneyed capital employed in banking or investment business, or in competition with such business, shall include evidences of indebtedness secured by mortgages of record upon real and personal property in this state, violate sections 1, 2 and 11, of Article XII, of the Montana Constitution, and the Fourteenth Amendment to the Federal Constitution.

Section 1 of Article XII provides for the raising of revenues by taxation upon all property by the levying of a uniform rate of assessment and taxation. Section 2 of the same Article enumerates the various classes of property which either are exempt or may be exempted by Act of the legislature. This section of the Constitution, as originally adopted, did not include mortgages of record upon real and personal property. In 1918 this section was amended: " * * * And evidences of debt secured by mortgages of record upon real or personal . property in the state of Montana, may be exempt from taxation." Upon the adoption of the amendment in 1918, the legislature amended what is now section 1998, Revised Codes 1921, so as to include therein a provision exempting all evi-

dences of indebtedness secured by mortgages of record in this state.

Under the provisions of Chapter 64, Laws of 1929, mortgages held by banking institutions or persons in the banking business or in competition therewith, enter into the computation to determine the value of moneyed capital used in said business and the value of the shares of stock of such business concern.

The appellant asserts that the effect of Chapter 64 is to render mortgages in the state of Montana, the property of banks and their competitors, subject to taxation, and permits mortgages owned by the casual investor to remain exempt. It is the position of the appellant that, under section 2 of Article XII of the Constitution of the state, the legislature was not compelled to exempt mortgages from taxation, but, if it did exempt some mortgages from taxation, all must be exempt, or otherwise the law would be invalid under the provisions of the state Constitution noted above.

The legislature, having the power under the Constitution to exempt this class of property, could exercise its power to the full extent or in part, or to decline to exempt at all so far as the provisions of the state Constitution are concerned. (*Congregation of United Brethren, etc.,* v. *Board of Commrs., etc.,* 115 N. C. 489, 20 S. E. 626; *Corporation Commission* v. *Oxford Seminary, etc.,* 160 N. C. 582, 76 S. E. 640; *Town of Andrews* v. *Clay County,* 200 N. C. 280, 156 S. E. 855; *Engstad* v. *Grand Forks County,* 10 N. D. 54, 84 N. W. 577; *Conrad* v. *Maricopa County,* (Ariz.) 12 Pac. (2d) 613.)

In truth and in fact mortgages owned by the appellant bank were not assessed as such. The record in this case discloses that appellant bank owned mortgages on real and personal property aggregating the sum of $435,000. The only moneyed capital assessed was the cash on hand, by reason of the fact that the deductions allowed under Chapter 64 of the Laws of 1929 exceeded the amount of the other assets coming within the definition of "moneyed capital" as defined in the Act. The shares of the bank were assessed for $54,442.25, and it is

this assessment which it is asserted amounts to assessing the mortgages in the sum of $435,000.

Furthermore, it was contended by appellant in this case that this same assessment of $54,442.25 was an assessment of $60,411.88 in government bonds and securities. In other words, appellant's contention is, as applied to the facts in this case, that, by reason of the stock of the appellant bank being assessed in the sum of $54,442.25, in effect an assessment was made and a tax levied upon the mortgages and Liberty bonds of the aggregate value of $495,411.88.

It is true that items of mortgages and Liberty bonds enter into the computation in order to arrive at the valuation determined by the taxing officers as the value of the shares of stock in appellant's bank; but it cannot be said that any tax was levied upon the mortgages under this method of taxation as such when consideration is given to the difference in the value of the shares of stock as determined and the value of the mortgages owned by the bank.

Giving consideration now to the question as to whether the inclusion of real property and chattel mortgages owned by a banking institution may enter into the computation in determining the amount of moneyed capital owned by a state banking institution and the value of its shares violates the Fourteenth Amendment, the most that can be said with reference to the procedure followed under Chapter 64 of the Laws of 1929 is that it amounts to a classification of property for the granting of an exemption from taxation.

The latitude of discretion is notably wide in the classification of property for purposes of taxation and the granting of partial or total exemptions upon grounds of policy. (*Royster Guano Co.* v. *Virginia*, 253 U. S. 412, 415, 40 Sup. Ct. Rep. 560, 64 L. Ed. 989.)

The power of exemption would seem to imply the power of discrimination; and in taxation, as in other matters of legislation, classification is within the competency of the legislature. (*Citizens' Telephone Co.* v. *Fuller*, 229 U. S. 322, 329, 33 Sup. Ct. Rep. 833, 57 L. Ed. 1206.)

Having already determined that the classification, as set up by Chapter 64, of property for the purposes of taxation, is valid, and having determined that the legislature under the state Constitution could exempt, if it so desired, a portion of a kind of property somewhat less than the maximum limits of its power, the legislature had the right to classify mortgages for the purpose of exemption. The reasons which are sufficient to justify a classification for the purposes of taxation should be, and are, sufficient to justify the classification of property for purposes of exemption.

Complaint is made by the appellant that under Chapter 64, Laws of 1929, separate methods of determining the value of credits for taxation are provided, in that this class of property when not in banking or competing business is valued by one method, and, when employed in banking or competitive business, by a different method.

In the case of the ordinary individual or casual investor under the provisions of section 1999, such person under the law as it now stands is not entitled in determining the valuations of credits owned to deduct therefrom the amount of his debts (section 1999, supra), whereas the bank is entitled to deduct from credits the amount of deposits and borrowed money. The bank is required to include in its computation the value of mortgages on real and personal property of record; the casual investor is not required by law so to do. It is urged that, by reason of the two distinct methods of determining the valuation of credits owned, the same provisions of the state and federal Constitutions are violated.

The deduction of the amount of debts owing, from the credits owned has been held by this court to be a proper method for the determination of the valuation of property and not the creation of an exemption. (*Daly Bank etc. Co.* v. *Board of Commrs., etc.,* 33 Mont. 101, 81 Pac. 950.) However, if we consider the difference between the two methods for the ascertainment of the value of credits as creating exemptions of one class to the exclusion of another, having determined herein that the creation of the classes is properly formed, it is per-

missible to give exemptions 'to one not given to another. (*Michigan Central Rd.* v. *Powers,* 201 U. S. 245, 278, 26 Sup. Ct. Rep. 459, 50 L. Ed. 744.)

We therefore conclude that, by reason of the provisions of ·Chapter 64, Laws of 1929, requiring that mortgages on real and personal property belonging to banking institutions be included in the computation in order to ascertain and truly reflect the value of the moneyed capital and the shares of the ·appellant bank, when other persons owning mortgages enjoy exemption from taxation thereon, for the reasons herein set ·forth, do not violate either the state or federal Constitution.

The appellant urges that Chapter 64 of the Laws of 1929 is in contravention of the provisions of sections 1 and 11 of Article XII of the state Constitution and the Fourteenth Amendment, for the reason that such law singles out state and national banking corporations and subjects their shares of stock to taxation, for the reason that no law exists for the taxation of shares of other corporations in the state, and that in fact the shares of other corporations are not taxed.

Under the provisions of section 17 of Article XII of the Montana Constitution, shares of stock of a corporation are not subject to taxation, except so far as the value of the shares of a given corporation exceed the value of the property of the corporation on which taxes have been paid, and as to such excess the shares must be taxed.

Section 2015, Revised Codes 1921, provides for the taxing of the capital stock of corporations and the place of its taxation. Shares of stock are classified and go into class 7. (Sec. 1999, Rev. Codes 1921; *State ex rel. Conrad Banking Corp.* v. *Mady,* 83 Mont. 418, 272 Pac. 691.) Taxes are imposed on the basis of 40 per cent. of the full and true value of ordinary stocks. (Sec. 2000, Rev. Codes 1921.) Section 2002, Id., requires the assessor to assess all property subject to taxation. The provisions of section 2003, Id., require the taxpayer to furnish the assessor with a statement, under oath, setting forth all the property claimed by him, and also all property in his possession. That section provides that certain

officers of a corporation must furnish a statement as to all property owned by or in possession of the corporation. The provisions of section 2006, Id., empower the assessor to subpoena and examine any person in relation to the statement of his property or property in his possession furnished by him. If any person refuses to make a statement under oath as required, the assessor is authorized by section 2007, Id., to note the refusal on the assessment-book and make an estimate of the value of property owned by such person, and such estimate cannot be reduced by the board of county commissioners.

It appears from an examination of the foregoing statutes that a method for the assessment and taxation of shares of stock in corporations, other than banking corporations, is provided.

In order to comply with the constitutional requirements of ▮▮▮ equality and uniformity, taxes on all classes of property do not have to be imposed under exactly the same proceedings. No constitutional rights are violated merely because the legislature has provided different methods and agencies for the collection of taxes on different classes of property. (26 R. C. L., sec. 218, p. 245.) "Differences in the machinery for assessment or equalization do not constitute a denial of equal protection of the laws." (*Southern Ry. Co.* v. *Watts*, 260 U. S. 519, 525, 43 Sup. Ct. Rep. 192, 195, 67 L. Ed. 375.)

The appellant proved in this case that on the first Monday of ▮▮▮ March, 1929, approximately 200 corporations organized and existing under the laws of this state had shares of stock outstanding in the hands of stockholders residing in Montana, engaged in various businesses, owning property in the state subject to taxation, which was taxed in the different counties of the state, and that the stock of none of these corporations had been taxed. This proof is insufficient to support the contention of the appellant, in that it nowhere appears in the record in this case that as to any or all of the corporations the value of the stock outstanding exceeded the value of the property on which these corporations paid taxes. In the absence of a showing to the effect that there was such

excess in valuation, the proof was insufficient to support the contention of appellant in this respect.

The appellant further offered in evidence the returns of three insurance companies for purposes of taxation, and asserts that no tax was levied or paid on the stock in the hands of the stockholders of the three insurance companies.

The record is barren of any proof establishing the value of the shares of stock in the three insurance companies. Appellant apparently proceeds upon the theory that, having established the value of the assets of the corporation, he has thereby established the value of the shares; in other words, it proceeds upon the notion that shares of stock represent an interest in the property of the corporation. While no doubt the property and the expectations of a corporation are the backbone of the value of its shares, yet the shares may obtain additional value. (*Klein* v. *Board of Tax Supervisors of Jefferson County*, 282 U. S. 19, 23, 51 Sup. Ct. Rep. 15, 16, 75 L. Ed. 140, 73 A. L. R. 679.) While it is sometimes said that a corporation is a fiction, if it is a fiction, it is a fiction created by law with intent that it should be acted on as if true. ''The corporation is a person and its ownership is a nonconductor that makes it impossible to attribute an interest in its property to its members.'' (*Klein* v. *Board of Tax Supervisors,* supra; *Donnell* v. *Herring-Hall-Marvin Safe Co.,* 208 U. S. 267, 273, 28 Sup. Ct. Rep. 288, 52 L. Ed. 481.)

The proof not disclosing what the value of the shares in the three insurance companies might be in the hands of the shareholders, and the proof by reason of the fact that the value of the shares in the hands of the shareholders is different from the value of the assets of the corporation, failed to make a case sufficient to entitle the appellant to raise the question urged.

Nor can it be said that discrimination arises by reason of the fact that shares of bank stock are assessed and taxed on the basis of their book value. The shares of bank stock are to be valued for purposes of assessment as other taxable property, namely, at their full cash value, except so

far as their value is reduced by the value of property assessed to the bank. (*Daly Bank etc. Co.* v. *Board of County Commrs.,* 33 Mont. 101, 81 Pac. 950; *Montana National Bank* v. *Yellowstone County,* 78 Mont. 62, 252 Pac. 876.)

Banks in making their returns and for purposes of taxation use the book value of the stock, but no legal reason exists for their so doing, and doubtless they might do otherwise were it not for certain practical reasons, among which may be mentioned that if the bank in making its return used a valuation for purposes of taxation somewhat less in amount than the book value, and the value of its assets as disclosed by published statements in accordance with our banking laws, public confidence in the institutions would be greatly shattered, if not entirely lost.

It is suggested by appellant that this court may take judicial notice of the reports of the state board of equalization, and that they disclose that no shares of stock in other corporations were assessed or taxed. The record does not disclose that this suggestion was made to the trial court. The reports of that board contain tabulated statements of the amounts of numerous classes of personal property assessed and subjected to taxation within the state; while there is no tabulation found therein of shares of stock, there is a tabulation containing all other personal property assessed and taxed not therein otherwise classified. As to what this particular tabulation may comprise, the report does not show.

Chapter 64, Laws of 1929, does not on its face discriminate in favor of the shareholders of other corporations as against shareholders in banking corporations, and the record fails to reveal that such discrimination exists in fact.

Appellant further assails Chapter 64, Laws of 1929, as being violative of the provisions of section 3701 (31 U. S. C. A., sec. 742) and other sections of the Revised Statutes and laws of the United States exempting its bonds and securities from taxation, by singling out state banking corporations and subjecting their shares to taxation wholly and solely because of their ownership of United States bonds and securities which

cannot be taxed as a part of their moneyed capital, thereby subjecting such bonds and securities to taxation by taxing their shares of stock, and asserting that no provision is made by the laws of this state for the taxation of shares of other corporations which may own United States bonds and securities.

With reference to the last assertion, the provisions of the laws of the state of Montana heretofore noted provide an adequate method of taxing the stock of other corporations than a banking corporation at its full and true value.

Shares of stock in a corporation have a distinct value of their own, which value is not limited to the exact value of the assets of the corporation. (*Klein* v. *Board of Tax Supervisors of Jefferson County*, 282 U. S. 19, 51 Sup. Ct. Rep. 15, 75 L. Ed. 140, 73 A. L. R. 679.) In the taxing of shares of stock in a banking corporation, the value of the United States securities owned by the corporation may enter into the computation to determine the value of such stock, together with the other assets of the corporation, and thereby the statutes of the United States exempting from taxation securities of the United States are not violated. (*Des Moines Bank* v. *Fairweather*, 263 U. S. 103, 44 Sup. Ct. Rep. 23, 68 L. Ed. 191; *Montana National Bank of Billings* v. *Yellowstone County of Montana*, 276 U. S. 499, 48 Sup. Ct. Rep. 331, 72 L. Ed. 673; note, 57 A. L. R. 899.)

However, if the sole or principal purpose of the enactment of the law is to tax indirectly securities of the United States or the income therefrom, then such a law is contrary to the statutes of the United States exempting these securities from taxation. (*Macallen Co.* v. *Massachusetts*, 279 U. S. 620, 49 Sup. Ct. Rep. 432, 73 L. Ed. 874; *Miller* v. *Milwaukee*, 272 U. S. 713, 47 Sup. Ct. Rep. 280, 71 L. Ed. 487.)

The appellant relies strongly upon the last two cases cited, and asserts that the only purpose of taxing the stock of state banking institutions is to tax these securities of the United States held by such banks.

The two cases on which reliance is placed by the appellant involved in each instance a state of facts wherein, if the cor-

poration owned United States securities, the income therefrom was fully taxed against the stockholders. Under the laws of Montana now under consideration, there are four situations which may exist with reference to a state banking corporation owning securities of the United States, wherein the stockholders would not be taxed to the full amount, or not at all, as a result of such ownership, namely: (1) Where a bank owns within the state real estate and tangible personal property on which it pays taxes of a value in excess of the value of the stock; (2) where a bank owns tangible property without the state; (3) where a bank owns United States securities of a value in excess of the value of the stock of the bank; and (4) where the full true value of the stock of the bank is greater than, or less than, the book value of the capital stock of the bank.

The record discloses in this case that the appellant bank was the owner of $60,411.88 in government securities, and that the assessment of the stock was $54,442.85. The appellant offered in evidence assessments of various banks from which it contends that its point is thereby conclusively established, but we find that, with reference to the banks at Manhattan and Poplar, by reason of the amount of tangible property owned by such institutions, no tax was levied upon the stock in the banks, although they owned United States securities.

It is worthy of note that the appellant only offered assessments of comparatively small banks, many of which are located several hundred miles from its place of business. Not a single assessment of any of the larger state banks, other than that of the appellant bank, was submitted or offered in evidence.

Therefore, the indirect taxing of United States securities wherever it exists under Chapter 64, Laws of 1929, and the laws of which said Act is amendatory, is casual and not intentional, and not in violation of the statutes of the United States exempting such securities from taxation under the above-cited authorities.

Furthermore, the fact that the statute reaches tax-exempt securities indirectly was not intended as a principal purpose

of the statute. It was enacted for the sole purpose of making the Act conform in good faith to the requirements of federal statutes with reference to the taxation of national banks. (*Pacific Co., Ltd.,* v. *Johnson,* 285 U. S. 480, 52 Sup. Ct. Rep. 424, 76 L. Ed. 893.)

Appellant insists that Chapter 64, Laws of 1929, and other laws of the state, of which said Act is amendatory, cannot be enforced or applied alike to all banking institutions in the assessment and taxation of their property and stock, without an unfair and unjust discrimination against some state banking corporations and their stockholders and in favor of others and their stockholders.

This argument is based solely upon certain alleged discriminations against certain other banks in the state, other than appellant, and finds its basis in the assessments of such banks, which were received in evidence. Appellant is without standing in this court to raise this question, because the record does not disclose that it belongs to the class discriminated against. (*State ex rel. Powell* v. *State Bank of Moore,* 90 Mont. 539, 552, 4 Pac. (2d) 717; *State ex rel. Brooks* v. *Cook,* 84 Mont. 478, 276 Pac. 958; *Dillingham* v. *McLaughlin,* 264 U. S. 370, 374, 44 Sup. Ct. Rep. 362, 68 L. Ed. 742; *Detroit etc. Ry.* v. *Osborn,* 189 U. S. 383, 391, 23 Sup. Ct. Rep. 540, 47 L. Ed. 860.)

Appellant further contends that Chapter 64 of the Laws of 1929 is unconstitutional in that it provides a method for the assessment and taxation of the moneys, credits and shares of a state banking corporation, which results in the imposition of taxes thereon at a higher rate than is imposed upon competing moneyed capital, in violation of sections 1 and 11 of Article XII of the state Constitution. The record in this case fails to disclose that there is any such competing capital, and, upon the authority of the case *of Merchants' National Bank of Glendive* v. *Dawson County,* infra, p. 310, this day decided, wherein this question is fully discussed and decided adversely to the contention of the appellant herein, it

is therefore accordingly held that the contention is without merit.

The appellant further insists that Chapter 64 of the Laws ▮ of 1929 is unconstitutional by reason of the fact that no hard-and-fast rule is prescribed therein for the determination of the question by the county assessor as to when capital competes with banking institutions and therefore confers upon the taxing officer judicial discretion.

This question is discussed and decided adversely to the contention of the appellant in the case of *Merchants' National Bank of Glendive* v. *Dawson County,* supra.

Appellant contends that the enactment of Chapter 64, Laws ▮ of 1929, amending section 2067, Rev. Codes 1921 and Chapter 64 of the Session Laws of 1927, so far as they relate to the taxation of moneyed capital and shares of stock of state banks, are special laws and in contravention of section 26 of Article V of the state Constitution. The basis of this attack is that these various laws require a report for purposes of assessment by the banking corporation, and that none is required under the laws of the state with reference to the owners of competing capital.

The taxing authority of the state, as we have already stated, has the right to demand a statement from such competing capital as to the ownership and possession of property. The provisions of these laws apply alike to all banks throughout the state, both national and state. These enactments are not subject to the attack made, for the foregoing reason. (*State ex rel. Bray* v. *Long,* 21 Mont. 26, 30, 52 Pac. 645; *Hersey* v. *Neilson,* 47 Mont. 132, 131 Pac. 30, Ann. Cas. 1914C, 963.)

The remaining contention of appellant involves the same question under identical conditions, as in the case of *Merchants' National Bank of Glendive* v. *Dawson County,* supra, and on the authority of which we hold the same to be without merit.

The judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, MATTHEWS and STEWART concur.

Rehearing denied March 24, 1933.